## James L. Graham, Trustee, Now for Use of W. Macrum, Trustee, Plff. in Err., v. Joseph Taggart, et al.

One partner cannot rightfully apply the partnership funds to the discharge of his own pre-existing debt, without the assent of the other partner.

Where a bank received a check drawn by one partner in the name of the partnership firm, with notice that he was thereby using the assets of the firm to pay his own private debt, it took the risk of the assent of the other partner; and where such transaction is in fraud of that partner, he cannot be held.

(Argued November 3, 1887. Decided November 11, 1887.)

October Term, 1887, No. 208, W. D., before GORDON, Ch. J., PAXSON, STERRETT, and WILLIAMS, JJ. Error to the Common Pleas No. 2 of Allegheny County to review a judgment in favor of the defendant Joseph Taggart. Affirmed.

The case was submitted upon the following case stated:

John Taggart, Jr., one of the defendants, being indebted to

NOTE.—The same determination was made in Kutz v. Naugle, 7 Pa. Super. Ct. 179. But the other members of the firm may so acquiesce in the conduct of the copartner, as to bind the partnership assets. Sweeney v. Girolo, 154 Pa. 609, 26 Atl. 600; Callender v. Robinson, 96 Pa. 454. The latter case is distinguished in White v. Rech, 171 Pa. 82, 32 Atl. 1130, where the note of a single partner was taken, and the fact that a partnership existed was subsequently discovered.

James L. Graham, trustee for the Allegheny Savings Bank, in the sum of $250, upon a promissory note made by said John Taggart, Jr., indorsed by John Taggart, Sr., and maturing October 2, 1876, on that day delivered at the place of business of said bank, in payment of the said note, the check in suit in the words and figures following:

> Allegheny, October 2, 1876.
> Enterprise Savings Bank of Allegheny, Pay to cash or bearer two hundred and fifty dollars.
> ($250).                                         J. & J. Taggart.

The said bank knew at the time it received said check that said John Taggart, Jr., was a member of the firm whose signature is affixed to said check as the makers thereof, and knew also that said signature as well as the remainder of the written part of said check was entirely in his hand writing; and thereupon the said holder of his note gave the same up to him, and the liability of the said indorser thereon was at an end before the hereinafter stated facts came to the knowledge of the said bank (which had been the holder of said note.)

Joseph Taggart, one of the defendants, and copartner with said John Taggart, Jr., in the firm of J. & J. Taggart, who are the alleged makers of said check, was informed of the transaction by one of the tellers of said bank on the evening of the day on which said check was given and after the close of the bank on that day.

The said check had been given in fraud of the rights of said Joseph Taggart.

On the next morning at the opening of the Enterprise Savings Bank he stopped payment of said check, and afterwards on the same day gave notice to said Allegheny Savings Bank that said check was made without his knowledge or consent and in fraud of his rights.

If the court be of the opinion upon the facts stated that the law is with the plaintiff, a judgment shall be entered in his favor according to the affidavit of claim, but if the court shall be of the opinion that the law is with the defendant Joseph Taggart, then judgment to be entered in his favor, but separate judgment to be entered against John Taggart, Jr., in such case for the

amount mentioned in the affidavit of claim, costs to follow the judgment and each party reserving the right to a writ of error.

The case was decided by the following opinion by EWING, P. J.:

"We are of the opinion that the facts set forth in the case stated were notice to the plaintiffs bank that John Taggart, Jr., was using the assets of his firm to pay his own private debt, and they thereupon took the risk of the assent of the other partner. The fact is admitted that it was in fraud of the rights of the other partner, Joseph Taggart; consequently he cannot be held."

Thereupon judgment was entered as follows:

"And now, July 13, 1887, after argument and upon consideration, judgment is entered on the case stated in favor of the plaintiff against John Taggart, Jr., for the sum of four hundred and fifty-one and twenty-five one-hundredths dollars ($451.25), and in favor of Joseph Taggart, the other defendant, against the plaintiff, for costs."

Thereupon plaintiff took this writ, assigning as error "that the judgment is erroneous."

*William Macrum,* for plaintiff in error.—In Pennsylvania the rule is settled in our favor by Fulweiler v. Hughes, 17 Pa. 440.

The question was whether Hughes was the bona fide holder of a check payable to the order of E. Jackson & Co., indorsed by Jackson, one of the firm, and delivered, in fraud of the firm and as a mere gratuity, to the persons from whom Hughes took it in payment of a debt. It was decided that though Hughes knew it was a gift from the indorsing partner when he took it from the donee, his title to it was good against the firm and their attaching creditors.

In Chitty, Bills, marg. p. 48, after citing some of the cases on notes and acceptances, the author proceeds:

"But as a partner may in his individual capacity have a claim upon the firm, in respect of which he might draw, accept, or indorse a bill in the name of the firm, it has in other cases been considered that the mere circumstance of the party to whom he delivers it knowing that he was using it for his private benefit,

does not of itself necessarily afford sufficient presumptive evidence of collusion to invalidate the transaction; and that the partner objecting to the liability must prove all the facts sufficient to induce a jury to find that the partner really acted fraudulently, and that the holder had notice of the fraud." Citing *Ex parte* Bonbonus, 8 Ves. Jr. 542, 544; and Ridley v. Taylor, 13 East, 175—cases of bills of exchange.

The case of a check, which does not constitute a pledge of credit, but is a mere representative of money, is clear of any reasonable presumption of fraud.

In Frankland v. M'Gusty, 1 Knapp, P. C. 274, MASTER OF THE ROLLS, after referring to the special circumstances in Ridley v. Taylor, tending to induce the creditor to believe that the bill had become the separate property of his debtor—that it was dated eighteen days before its delivery, and was of greater amount than the separate debt—says that if there are circumstances "to show a reasonable belief that it was given with the consent of the partnership, it lies upon the partners to prove the fraud." This means, of course, the holder's participation in the fraud.

In 3 Stephens' *Nisi Prius* (Am. ed. by Sharswood), p. 2418, the doctrine is stated in accordance with the above authorities: "If there be circumstances to show a reasonable belief that a security was given with the consent of the partnership, it lies upon the partners to prove the fraud."

The case of Rogers v. Batchelor, 12 Pet. 221, 9 L. ed. 1063, holding that even where the creditor has no knowledge that the fund or chattel is or ever was partnership property, the title of the defrauded partner is not devested, seems not to be law. It is controverted and overruled in Locke v. Lewis, 124 Mass. 1, 26 Am. Rep. 631. The Massachusetts doctrine is enforced in Callender v. Robinson, 96 Pa. 454. Also by Judge STORY (who delivered the opinion in Rogers v. Batchelor) in Story on Partnership, § 132. And this Massachusetts case, which so expressly condemns the doctrine of the Federal court was twice approvingly cited last April by Mr. Justice BLATCHFORD in Huiskamp v. Moline Wagon Co. 121 U. S. 324, 30 L. ed. 976, 7 Sup. Ct. Rep. 899.

Judge GIBSON's *dictum* in Tanner v. Hall, 1 Pa. St. 417, quoted by Judge BELL in Purdy v. Powers, 6 Pa. 492, "that a partner cannot pay his separate debt with the joint funds,

though the creditor may not suspect the misapplication; for the wrong may be redressed without prejudice to anyone," is refuted in the Massachusetts case *supra,* and is inconsistent with subsequent decisions in this state. Anyway, it does not apply to our case; for here the note was given up and the indorser released before the bank knew of the fraud on Joseph, as the case stated expressly admits.

The case stated does not find that the plaintiff knew that John Taggart, Jr., had drawn this check of the firm (payable to bearer) for the purpose of lifting his note. The fact that the firm's name was in John's handwriting was no notice of the fraudulent purpose. Miller v. Consolidation Bank, 48 Pa. 514, 88 Am. Dec. 475; Moorhead v. Gilmore, 77 Pa. 118–123, 18 Am. Dec. 435.

The modern doctrine is that nothing short of knowledge of fraud will impeach the title of a holder of commercial paper. Phelan v. Moss, 67 Pa. 59, 5 Am. Rep. 402; Battles v. Laudenslager, 84 Pa. 446; Moorhead v. Gilmore, 77 Pa. 118–123, 18 Am. Dec. 435.

The case stated expressly finds this ultimate and all important fact,—*viz.,* that the bank did not know until after it had parted with the note and released the indorser, on the strength of the check, that the latter was negotiated in fraud of Joseph's rights.

*C. S. Fetterman* and *S. A. & M. Johnston,* for Joseph Taggart, defendant in error.—The only question raised by the case stated is: Had Joseph Taggart, when he discovered that a check had been drawn by his partner without his knowledge or consent, on the firm funds, for the payment of an individual debt in a bank where the firm had no dealings or account, a right to protect himself and firm by notifying the bank upon which the check was drawn to refuse payment of the same if presented ?

One partner cannot divert the partnership property to his own use or in payment of his individual debts without the knowledge or consent of his copartners.

Parsons on Partnership, 4th ed. § 90, p. 96, states the law in this way: "Instances of partners using the name or credit of the firm for their personal advantage are constantly occurring; and, as we have seen, when this is known to the person dealing with them, the firm are not held."

There is a rule, however, which rests on strong authority and is in itself reasonable, just and convenient. It is that "when-

ever a party receives from any partner, in payment for a debt due from that partner only, whether the debt be created at the time or before existing, or by way of settlement of, or security for a debt, the indebtedness, or obligation of the firm in any form, the presumption of law is that the partner gives this, and the creditor receives it, in fraud of the partnership, and has consequently no demand upon them." Parsons, Partn. 4th ed. § 90, p. 96. Again; on p. 178, § 136: "The true rule should be, and we are confident that it is so in the United States, that any act whatever of a partner, certainly for his own individual and several benefit, and not obviously for that of the firm also, does not bind the firm until the holder proves their authority or ratification."

The same doctrine is mentioned in Kent's Commentaries, vol. 3, p. 43, where it says: "It is a well-settled doctrine that one partner cannot rightfully apply the partnership funds to discharge his own pre-existing debts without the express or implied assent of the other partners."

This is the case even if the creditor had had no knowledge at the time of the fact of the fund being partnership property.

Story on Partnership also lays down the same doctrine; and without particular citation we refer to § 102 and notes, and also §§ 132, 134, and notes, as fully sustaining the position of defendant in error.

In King v. Faber, 22 Pa. 21, it was held that the authority of the partners was limited to the business of the partnership; and an acting partner, like others, was confined within the same limit.

And to the same effect in Clay v. Cottrell, 18 Pa. 408. Proof of knowledge that the indebtedness or obligation of the partnership had been applied by one partner to pay his own debts is not proof of consent to or ratification of such misapplication by the other partners so as to rebut the presumption of fraud in the creditor. *Ex parte* Agace, 2 Cox, Ch. Cas. 312; Elliott v. Dudley, 19 Barb. 326.

If a partner consents that a check of the firm may be applied on an individual debt of his copartner, he may at any time before such application is in fact made or the rights of third parties intervene, withdraw such consent, and after notice by him not to so apply the check it cannot be so applied. National Bank v. Mapes, 85 Ill. 67; 1 Lindley, Partn. 275, note 4.

Per Curiam:

We agree with the court below that the facts set forth in the case stated were notice to the plaintiffs' bank that John Taggart was using the assets of the firm to pay his own private debts, and that, therefore, they took the risk of the assent of the other partner, and also that the transaction being a fraud on that partner he cannot be held.

The judgment is affirmed.